21 F.3d 430
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 Otto CERNY, Plaintiff-Appellant,
v.
Knut KVISTAD, et al., Defendants-Appellees.
 No. 93-2078.
 United States Court of Appeals, Seventh Circuit.
 Submitted March 29, 1994.[1]
Decided March 30, 1994.
 
 Before POSNER, Chief Judge, and FLAUM and RIPPLE, Circuit Judges.
 
 ORDER
 
 1
 Otto Cerny filed this diversity action alleging that defendants had violated his trade secrets. Plaintiff now appears pro se[2] and appeals from a district court order entering summary judgment in favor of defendants. For the reasons stated in the attached Memorandum Opinion of the district court, the judgment of the district court is AFFIRMED.
 
 ATTACHMENT
 MEMORANDUM OPINION
 
 2
 WILL, District Judge.
 
 
 3
 Cerny charges Kvistad and Condit Manufacturing with violating his trade secrets, and this case is within our jurisdiction due to diversity of citizenship. Cerny claims that Kvistad revealed his trade secrets relating to photocomposition in a book which Kvistad wrote, and which Condit helped to publish and distribute. He claims that Condit also violated two of his trade secrets by selling certain pieces of equipment. For further details see our memorandum opinion of June, 1990.
 
 
 4
 On March 28, 1991 we denied summary judgment because of factual disputes in three areas: (1) whether Cerny has guarded his inventions closely enough to make them trade secrets; (2) whether Condit and Kvistad knew about Cerny's "secrets"; and (3) whether, if Condit and Kvistad did in fact know about Cerny's "secrets," they learned what they knew by "improper means." Both defendants have moved again for summary judgment with new evidence. The first issue, whether Cerny made sufficient efforts to keep his discoveries secret so that they are entitled to protection as trade secrets is not argued in this second motion. The new evidence relates to the second and third issues.
 
 Under F.R.C.P. 56(c) summary judgment:
 
 5
 shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.
 
 
 6
 The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). The opposing party must then show that there is a genuine issue for trial, that is, that "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." Anderson, 477 U.S. at 255.
 
 
 7
 There never has been any direct evidence on points two and three, but in the first summary judgment motion we ruled that a jury could infer knowledge of the secrets from the similarity of methods Cerny and Kvistad each wrote about. Specifically, Cerny claims to have written up a procedure that didn't really work in his notebook, so that he would know of any copying (this is known as Secret D, system 1). The alleged mistake appears in Kvistad's book. They also both use "DR" to refer to this process--although the DR stands for different words. Based on this evidence, we ruled, a jury could infer copying. Further, given the evidence of Cerny's attempts to maintain secrecy, the jury could infer that the only explanation for the copying is that the defendants obtained the secrets through improper means. The defendants could then prove prior invention to show that they didn't copy Cerny.
 
 
 8
 Since the first summary judgment motion, the defendants have submitted additional evidence, mostly undisputed by Cerny, which shows that they were aware of the processes and equipment in Cerny's claimed secrets by January 1987. They argue that this merits summary judgment because Cerny's theory had been that Kvistad obtained the secrets when he was conducting a seminar at Ross Ehlert Labs in Chicago in the spring of 1988. Since Casey Sills, who shared Cerny's lab space, was a customer of the Ross Ehlert labs, Cerny argued that Sills told someone at Ross Ehlert, who in turn told Kvistad in the spring of 1988. In the alternative Cerny argues that Peter Bradshaw told Kvistad. The only contact between Bradshaw and Kvistad was a brief meeting that neither of them remembers at a photography conference in late 1987. Since there is no dispute about the times of these meetings, and that the defendants knew about the techniques by early 1987, they argue they are entitled to summary judgment.
 
 
 9
 Cerny's response is that Kvistad must have somehow obtained access to his secrets in 1986, and he notes that Kvistad did visit a relative in Chicago for one week that year. Cerny provides no explanation for how Kvistad gained access to his secrets simply by being in Chicago. However, as we ruled when denying the first summary judgment motion, a jury could infer copying merely from the extreme similarity. Since Cerny does not have to prove how Kvistad learned of his secrets, evidence that Kvistad knew the substance of Cerny's trade secrets in early 1987 is insufficient for summary judgment. Cerny claims that the theft occurred between 1986 and 1988 (brief at 6). Only if the defendants had evidence that they knew the substance of Cerny's secrets before 1986, would they be entitled to summary judgment. We examine the evidence for each secret individually.
 
 
 10
 Cerny claims five trade secrets in his response to interrogatories:
 
 
 11
 Secret A: a combination of several pieces of photography equipment which Cerny did not independently invent, with the addition of trade secret C. Cerny claims that this combination of pre-existing equipment is a trade secret, developed in 1983. He accuses Condit of selling this equipment, and Kvistad of describing the system in his book.
 
 
 12
 Secret C: a specific array of lights. Cerny first described this as any array that produces "exact evenness of light." He then specified two different formulations: a complex arrangement of several bulbs of different wattages, arranged in a square developed in 1986, and a simpler arrangement of four bulbs in a square developed in 1981. He accuses Condit of selling and Kvistad of publicizing secret C, however he has not identified any light system that is the same as his claimed secret.
 
 
 13
 The remaining three secrets are photographic processes which he accuses Kvistad of describing in his book and Condit of publicizing through distribution of the book.
 
 
 14
 Secret B: a photocomp process involving the use of an enlarger as a camera, and requiring the use of light source C, discovered in 1983.
 
 
 15
 Secret D: has two variations, called systems 1 and 2, developed in 1986. Each involves different film and developers but the same process. The process uses masks to reduce shadow density and show greater detail. Cerny called this his DR process for "detail retrieval." He claims that system 1 does not really work, but was included in his notes to detect copying.
 
 
 16
 Secret E: is a process for increasing the saturation of color when making a print.
 
 
 17
 We will assume, for the purpose of ruling on summary judgment that Cerny made adequate attempts to maintain the secrecy of these discoveries, sufficient to be entitled to trade secret protection.
 
 1) Trade Secrets A and C
 
 18
 Condit has submitted invoices showing that they sold the pieces of equipment that Cerny claims are a part of his trade secret as early as 1986, with the exception of his light array. They have never sold (Condit states, and Cerny has not contradicted) a light array that is the same as Cerny's specific arrangement of bulbs. Taking the more general statement of Cerny's secret--lights arranged in a square--they still have not sold such equipment, although they have been selling lights arranged in a rectangle. They presented evidence, however, that various arrangements of lights (mostly variations on squares or rectangles) have been sold for use in photography for many years. Thus, only Cerny's specific arrangement of bulbs would be protected, and that they have not violated.
 
 
 19
 Most significantly, in response to the invoices they presented, Cerny stated (brief at 4) "Plaintiff contends there is no relationship between the equipment described in Condit's eight invoices and Cerny's trade secrets. These pieces of Condit equipment have been sold for 30 years by Condit to the Dye Transfer Trade." Since the equipment listed in the invoices is apparently the only equipment Cerny ever accused Condit of selling in violation of his trade secrets, he concedes the case. Finally, Cerny argues (brief at 7) that there is no evidence that Condit sold this equipment for use with Cerny's trade secrets. But the processes are separate secrets; so Condit can be found not liable for violation of alleged secrets A and C, and still be liable for violation of secrets B, D, and E. Cerny's development of new procedures does not make illegal the sale of equipment which can be used to follow those procedures, it is when Cerny develops new equipment that he can prevent the sale of such equipment by others. Kvistad's book merely publicized the Condit equipment discussed above, so the defendants are entitled to summary judgment on secrets A and C.
 
 2) Trade Secret B
 
 20
 Cerny claims that he developed this secret in 1983, and, as with all the secrets, that it was stolen between 1986 and 1988. The defendants presented some evidence that Kvistad knew of the procedure in 1987, because of the notes showing that he was writing the book then. They did not, however, present any evidence that he knew of this claimed secret before 1986. This is unnecessary however, because Cerny himself defined this trade secret to require the use of light source C (Cerny's supplemental response to Condit's combined interrogatories, No. 8). Since, as found above, there is no dispute that defendants did not possess or reveal trade secret C, they could not have had trade secret B, which requires C. In response to this argument, plaintiff has attempted to redefine trade secret C more generally. Plaintiff made his claim of his secret, and he cannot change it now in order to save his case. It is clear from all papers filed in this case that Mr. Cerny claimed certain lights arranged in a square. It is clear from uncontradicted affidavits and invoices that Condit sold lights arranged in a rectangle, even before the claimed invention of light source C. He may not now call the defendants' equipment a "partial solution" because a rectangle is like a square, and retroactively claim defendants' equipment an infringement of his trade secret. Summary judgment on trade secret C necessarily entitles the defendants to summary judgment on trade secret B.
 
 3) Trade Secret D
 
 21
 As mentioned above, Trade Secret D has two variations: system 1 and system 2, and Cerny claims that only system 2 is workable. (See, e.g., Plaintiff's Memorandum in Opposition to Kvistad's Motion for Summary Judgment; Cerny deposition at 338). Cerny claims that system 1 is deliberate misinformation he included with his notes to detect copying. The defendants have produced affidavits from photographers averring that they have successfully used what Cerny claims is his unworkable system 1. Cerny no where claims that defendants possess or reveal his system 2. See Cerny deposition at 482, "In substance a difference between his and my System 1, no. There is a difference between his and my System 2." When asked to specify where Kvistad's book reveals Secret D, Cerny specifies portions which reveal system 1 only. Thus, there can be no infringement of system 2, Secret D, which was not revealed.
 
 
 22
 System 1 of so-called trade secret D, however, cannot be a trade secret if Cerny is to be believed. A trade secret is defined in the Illinois Trade Secrets Act:
 
 
 23
 "Trade secret" means information, including but not limited to, technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list of actual or potential customers or suppliers, that:
 
 
 24
 (1) is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and
 
 
 25
 (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality.
 
 
 26
 Ill.Rev.Stat. ch. 140, par. 352(d). Something which the inventor claims does not work and does not produce useful results, cannot be a trade secret because it cannot have any economic value. Thus, defendants are entitled to summary judgment on this claimed secret as well.
 
 4) Trade Secret E
 
 27
 Cerny has presented no evidence that Kvistad or Condit knew of and revealed this secret. In responses to interrogatories Cerny cites to a sentence on page 2 of the Conclusion in Kvistad's book. However, this sentence merely states that a supplement to the book, dealing with color photocomp techniques would be published. In Kvistad's deposition at 306-7, he states that he knew of dozens of different processes using masks and color separation filters to increase the saturation of color when making a print or transparency. This does not prove that he knew of Cerny's process (secret E), or that the supplement will include Cerny's secret E. Thus, defendants are entitled to summary judgment on this secret.
 
 Conclusion
 
 28
 The relevant evidence is undisputed; indeed it consists primarily of claims and admissions made by the plaintiff himself. The defendants have not appropriated any of Cerny's trade secrets. Summary judgment is granted to both defendants on all counts, and the case is dismissed with prejudice and without costs. An order consistent with the foregoing will enter.
 
 DATED: February 4, 1993
 
 
 [1]
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Circuit Rule 34(f). No such statement having been filed, the appeal has been submitted on the briefs and record
 
 
 [2]
 All parties were represented by counsel before the district court